Richardson, J.,
delivered the opinion of the court:
On the 3d day of March, 1881, Congress passed the following act:
‘ ‘ Chap. 139. — AN ACT for the ascertainment of the amount clue the Chocta-w Nation.
“ Whereas the Choctaw Nation, for itself and in behalf of individual members thereof, malees claim against the United States on account of variotis treaty provisions which it is alleged have not been complied with: Therefore,
“Be it enacted, <&c., That the Court of Claims is hereby authorized to take jurisdiction of and try all questions of difference arising out of treaty stipulations with the Choctaw Nation, and to render judgment thereon;
“ Power is hereby granted the said court to review the entire question of differences de novo, and it shall not be estopped by any action had or award made by the Senate of the United States in pursuance of the treaty of eighteen hundred and fifty-five;
“ And the Attorney-General is hereby directed to appear in behalf of the Government; and if said court shall decide against the United States, the Attorney-General shall, within thirty days from the rendition of judgment, appeal the cause to the Supreme Court of the United States; and from any judgment that may be rendered the said Choctaw Nation may also appeal to said Supreme Court:
u provided, The appeal of said Choctaw Nation shall be taken within sixty days after the rendition of said judgment, and the said courts shall give such cause precedence.
“ Sec. 2. Said action shall be commenced by a petition stating the facts on which said Nation claims to recover and the amount of its claim : and said petition may be verified by either of the authorized delegates of said Nation as to the existence of such facts, and no other statements need be contained in said petition or verification.” (1 Supplement to Rev,. Stat., 608.)
On the 26th day of February, 1884, the Choctaw Nation filed their petition anew (as a substitute for former petitions), containing thirty-one articles, in which they state in full the facts on which they claim to recover, including the action of the Senate in relation to the treaties involved in the case. Among other matters set out in the petition are the following extracts from *249 a treaty made between them-and the United States June 22, 1855 (11 Stat. L., 611):
“ Preamble. * * And whereas the United States desire that the Choctaw Indians shall relinquish all claim to any territory west of the one hundredth degree of west longitude, and also to malee provision for the permanent settlement within the Choctaw country ofthef'ichita, and certain other tribes or bands of Indians— for which purpose the Choctaws and Chiclcasaws are willing to lease, on reasonable terms, to the United States, that portion of their common territory which is west of the 98th degree of west longitude ;
uAnd whereas the Choctaws contend that by a just and fair construction of the treaty of September the 21th, 1830, they are of right entitled to the net proceeds of the lands ceded by them to the United States under said treaty, and have proposed that the question of their right to the same, together with the whole subject-matter of their unsettled claim, whether national or individual, against the United States, arising under tlie various provisions of said treaty, shall be referred to the Senate of the United States for final adjudication and adjustment. * * *
“Article 11. The Government of the United States not being prepared to assent to the claim set up under the treaty of September the 27th, 1830, and so earnestly contended for by the Choctaws as a rule of settlement, but justly appreciating the sacrifices, faithful services, and general good conduct of the Choctaw people, and being desirous that their rights and claims against the United States shall receive a just, fair, and liberal consideration, it is therefore stipulated that the following questions be submitted for adjudication to the Senate of the United States—
“ Mrst. Whether the Choctaws are entitled to, or shall be allowed, the proceeds of the sale of the lands ceded by them to the United States by the treaty of September the 27th, 1830, deducting therefrom the c st of their survey and sale, and all just and proper expenditures and payments under the provisions of said treaty; and, if so, what- price per acre shall be allowed to the Choctaws for the land remaining unsold, in order that a final settlement with them may be promptly effected; or
“ Second. Whether the Choctaws shall be allowed a gross sum in further and full satisfaction of all their claims, national and individual, againstthe United States ; and, if so, how much.
“Article 12. In case the Senate shall award to the Choctaws the net proceeds of the lands ceded as aforesaid, the same shall be received by them in full satisfaction of all their claims against the United States, whether national or individual, arising under any former treaty; and the Choctaws shall thereupon become liable and bound to pay all such individual claims as may be adjudged by the proper authorities of the tribe to be equitable and just, the settlement and payment to be made with the *250 and advice under tlie direction of the United States agent for the tribe: ' ■
“And so much of the fund awarded'by the Senate to the Choctaws as the proper authorities thereof shall ascertain and determine to be necessary for the payment of the just liabilities of the tribe, shall on their requisition be paid over to them by the United States:
“ But should the Senate allow a gross sum in further and full satisfaction of all their claims, whether national or individual, against the United States, the same shall be accepted by the Choctaws, and they shall thereupon become liable for and bound to pay all the individual claims as aforesaid.
“ It being expressly understood that the adjudication and decision of the Senate shall be final.”
The petition then alleges tliat the Senate of the United States, having given to the claims careful examination and consideration, did on the 29th day of March, 1859, come to a conclusion thereon, and decide the same, and did thereupon adopt and cause to be entered of record in its journal, its decision of the said question as aforesaid submitted to it, as follows:
u Whereas the eleventh article of the treaty of June 22, 1855, with the Choctaic and Ghielcasaw Indians, provides that the following questions be submitted for decision to the Senate of the United States:
“ First, whether the Choctaws are entitled to or shall be allowed the proceeds of the sale of the lands ceded by them to the United States by the treaty of Seiffember the 27th, 1830,' deducting therefrom the costs of their survey and sale and all just and proper expenditures and payments under the provisions of said treaty; and, if so, what price per acre shall be allowed to the Choctaws for the landsremaining unsold, in order that a final settlement with them may be promptly effected; or,
“ Second, whether the Choctaws shall be allowed a gross sum in further and full satisfaction of all their claims, national and individual, against the United States ; and, if so, how much:
“ Resolved, That the Choctaws be allowed the proceeds of the sale of such lands as have been sold by the United States, on the first day of January last, deducting therefrom the costs of their survey and sale and all proper expenditures and payments under said treaty, excluding the reservations allowed and secured, and estimating the scrip issued in lieu of reservation at the rate of $1.25 per acre; and, further, that they be also allowed twelve and a half cents per acre for the residue of said lands.
“ Resolved, That the Secretary of the Interior cause an account to be stated with the Choctaws, showing what amount *251 is due them according to the above prescribed principles of settlement, and report the same to Congress.”
The petition further alleges “ that the Secretary of the Interior, in obedience to the mandate and requirement of the Senate of the United States, in the said decision, did cause an account to be stated between the United Stated and your petitioner, in some respects in conformity with the principles of decision declared and prescribed by the Senate, and the said Secretary of the Interior, upon such accounting, certified and declared that the United States owed and was indebted to your petitioner for and on account of the ‘ net proceeds ’ of the lands ceded by the treaty of September 27, 1830, in the sum of $2,981,247.30; which account, so stated by the Secretary of the Interior, was by him transmitted to the Congress of the United States on the 8th day of June, A. D. I860.”
The prayer of the petition, in effect, seems to be in the alternative: 1st, demanding under the action of the Senate, if that be upheld, after deducting alleged errors in the account stated by the Secretary of the Interior, $4,272,879.13; 2d, claiming as a balance due, independently of the action of the Senate, if that be not sustained, the sum of $8,659,695.67.
Schedules are annexed to the petition showing the items of which these several sums are composed.
The defendants have filed a demurrer as follows:
“ And now comes the Attorney-General and says that as to J so.much of the amended petition of the claimant as sets forth an alleged cause of action against the defendants, based upon a'certain alleged award of the Senate of the United States (referring especially to articles 18,19,20,21,23, and 27, and Schedules A and B of article 31, of the said amended petition), the same does not allege facts sufficient to constitute a cause of action.”
. The object of this demurrer, as stated at the argument, is top obtain the views of the court in relation to the force and effect to be given to the action of the Senate upon the rights and obligations of the parties, in advance of a final trial on the merits, in order to afford, to some extent, a guide in the preparation of the case on the one side and'the other. We have therefore carefully considered that, subject and will state the conclusions which have been reached.
By the eleventh article of the treaty of June 22, 1855, it was stipulated between the parties that two questions should be *252 submitted to the Senate for adjudication; and at the end of the twelfth article the following stipulation appears :
“It being expressly understood that the adjudication and decision of the Senate shall be final.”
By resolution of March 29, 1859, above set out, the Senate decided as to the first question, that—
“ The Choctaws be allowed the proceeds of the sale of such lands as have been sold by the United States on the first day of January last, deducting therefrom the costs of their survey and sale, and all proper expenditures and payments under said treaty, excluding the reservations allowed, and secured, and estimating the scrip issued in lieu of reservations at the rate of $1.25 per acre; and, further, thkt they be also allowed twelve and a half cents per acre for the residue of said lands.”
By agreement of the parties contained in the treaty, this adjudication and decision was made final, and so was and is conclusive, unless the finality and conclusiveness have been set aside by the concurrence of both parties.
In our opinion that has been done for the purposes of the present case. On the one side Congress, representing the United States, passed the act of March 3, 1881, above set out in full, giving this court jurisdiction to try all questions of difference arising out of treaty stipulations with the Choctaw Nation. Therein it is further enacted that—
“Power is hereby granted the said court to review the entire question of difference de novo, and it shall not be estopped by any action had or award made by the Senate of the United States in pursuance of the treaty of eighteen hundred and fifty-five.”
On the other side, the claimants, by coming into court, submitting to its jurisdiction thus conferred, and filing a petition, have assented to the terms of the act throughout.
The adjudication and decision of the Senate is, therefore, by the subsequent acts and agreement' of the parties, not to be taken as final and conclusive in the trial of this case.
It does not follow, however, that the action of the Senate will be wholly without force or effect under any circumstances of the case, that it cannot be given in evidence for any purpose, and that all reference to it in the petition must be disregarded and ruled out on demurrer. The act does not so provide. The jurisdiction conferred is general, to try all questions of difference arising out of the treaty stipulations. Power is then *253 granted to the court to review the entire question of differences de novo. One of the questions of difference may be whether or not the adjudication and decision of the Senate was warranted by the facts. To review that question we must have the action of the Senate before us. The enactment does not exclude such action from the consideration of the court 5 but, on the contrary, implies that it may be rightly offered in evidence. As to the effect of such action the act declares that the court shall not be estopped thereby.
Estoppel, in law, belongs to the branch of evidence. It precludes parties from contradicting one piece of evidence by other evidence,' however conclusive the latter might be if admissible. When, therefore, Congress, by its enactment, removed the es-toppel which sprung from the action of the Senate under the treaty stipulations, and the claimants, by their petition to this court, agreed thereto, it left such action open to explanation and rebuttal by any facts which might be proved on the one side and the other in the trial of all questions of difference, but it did not so blot it out of the case as to exclude it from all consideration by the court.
Either party may put in evidence that adjudication, and if not controverted it may present the principles, so far as it goes, upon which our final decision will rest, but if controverted we shall consider whatever facts and arguments may be offered in relation thereto.
Upon the second question submitted to the Senate, “ Whether the Choctaws shall be allowed a gross sum in further and full satisfaction of all their claims, national and individual, against the United States; aud, if so, how much,” no action was taken by the Senate.
The Secretary of the Interior was directed by the Senate, as appears by its second resolution, above set out, “to cause an account to be stated with the Choctaws showing what amount is due them according to the above-prescribed principles [determined as aforesaid], and report the same to Congress.” The Secretary did as he was directed, but his report was never adopted by the Senate, and no further action was taken in the matter.
The account thus made up was a mere clerical computation from information supposed to be in the Interior Department, and was not binding on either party.
*254 In the Indian appropriation act of March 2, 1861, chap. 85 (12 Stat. L., 221,238), Congress appropriated five hundred thousand dollars, in money and bonds, for payment to the Choctaw Nation or tribe of Indians on account of their claim under the eleventh and twelfth articles of the treaty of June 22,1855, with this proviso attached thereto: “ Provided, That in the future adjustment of the claim of the Choctaws under the treaty aforesaid, the said sum shall be charged against the said Indians.” This was not a ratification of anything that had been done by the Senate, but on the contrary it contemplates that there was to be a future adjustment of the claims of the Indians.
While we hold that there has been no binding award in any particular which is final and conclusive in this court, under the act of Congress, we also hold, as already indicated, that the action of the Senate is properly introduced in the petition, that it may be presented at the trial as prima facie evidence, and that under some circumstances it may become an important element in the decision of the case.
With this expression of our views, which covers all the points argued, the demurrer may be overruled.
Scoeield, J., took no part in this decision.